**Eugene HOMAN, Appellant,**

**v.**

**George LUSK, Appellee.**

Court of Appeals of Kentucky.

Nov. 6, 1964.

As Modified on Denial of Rehearing

Feb. 12, 1965.

C. B. Creech, Ashland, for appellant.

J. W. McKenzie, Baxter Arnett, Ashland, for appellee.

DAVIS, Commissioner.

Appellant Homan and appellee Lusk are architects. Appellant sued appellee, asserting an oral contract whereby appellee had agreed to compensate appellant by a sum equal to one-third of the net profits derived from architectural fees received into the business operated under appellee's name.

Appellee denied that such an agreement had been made. The trial court awarded judgment for appellant in the sum of $4,200.00. The parties challenge the judgment by direct and cross-appeals.

The basic question is whether there was a profit sharing agreement. If it is determined that such an agreement did exist, then the secondary question of accounting between the parties arises.

Appellant was employed as a draftsman in appellee's office about 1953. According to the evidence for appellant, in the latter part of 1955 appellee agreed to place appellant upon the profit sharing agreement, alloting one-third of net profits to appellant and two-thirds to appellee. This change was to become effective January 1, 1956. Appellant explained that the profit sharing arrangement was made as an inducement for him to remain with appellee rather than accept employment in California. Appellant said that he was to assume additional responsibilities incident to the increased income.

Appellant acquired a license as an architect in 1957. The parties maintained their working relationship until September 16, 1960, at which time they severed the association; the evidence fairly discloses that the ultimate breach in their working arrangement flowed from their disagreement as to the amount of compensation due appellant.

Appellant instituted the present litigation about three months after the separation. In his complaint he alleged the oral agreement mentioned, and asserted that a proper accounting should be required. The complaint charged that a sum "believed to be in excess of $35,000.00" is due from appellee to appellant. An additional $40,000.-00 was sought as damages for the claimed breach of the oral contract. Appellee denied the existence of any profit sharing contract.

Substantially all the evidence heard in the case was heard by the Master Com-missioner, to whom the matter had been referred by the trial court. Many of the facts are undisputed, while some are in sharp dispute. The following résumé of the evidence in behalf of appellant will suffice to present the nature of the factual issues:

Appellant gave his own testimony that there was a specific oral agreement between him and appellee whereby the profit sharing basis of compensation was established. To corroborate that testimony he showed that after the first quarter in 1956 appellant was no longer shown as an employee of appellee with regard to quarterly and annual federal withholding and social security taxes. Other outward changes in the conduct of the office were made; for example, the letterhead of the business was changed from "George A. Lusk, Architect and Engineer" to "George A. Lusk & Associates, Architects and Engineers." The name of appellant, as an architect, was carried in the subheading of the stationery.

There were changes as to the listing of the office and its personnel as carried in the Ashland telephone directory. The former listing was for "George A. Lusk, Architect"; this was changed to "George A. Lusk and Associates." The listing for appellant was changed from "draftsman" to "Associate, George A. Lusk." It is to be noted that appellee testified that these changes were not made by him, nor with his affirmative consent. However, appellee concedes that he saw the changed directory listings; he does not assert that he made any protest of the change.

Prior to 1956 the checks issued to appellant bore the designation "salary"; beginning in 1956 the checks were characterized as "drawing account." From time to time, after 1956, appellant received other checks entitled "bonus." According to appellant, the basis of the bonus payments was the net profit of the office for the previous year's business.

Appellant testified that he made frequent requests of appellee for a detailed account-

ing, and that after each of these requests his "bonus" payments increased but no accounting was forthcoming.

Appellant presented three other witnesses who deposed that appellee had on various occasions told the witnesses that appellant was to receive a one-third share in the net profits of the office. As to two of these witnesses, appellee presented evidence of possible bias as to him—including. the fact that the two witnesses presently are in appellant's employ. However, as to the witness Mrs. Moore no suggestion of bias on her part is made.

The witness Mrs. Moore related that she had prepared a paper (identified as plaintiff's Exhibit B in the record) at the request of appellee. This paper sets out certain computations projected by the appellee on the basis of a two-to-one division of the net profits. It is significant that this exhibit was prepared just after appellant had made rather insistent demand of appellee for an accounting, and before there had occurred the final breach between the parties. Of additional significance is the testimony given by appellee that he had never heard any mention of the two-to-one division of profits until the instant suit was filed, some months after the exhibit was prepared.

The appellee admitted that he had agreed to raise appellant's salary beginning January 1, 1956. His idea of the matter is best understood by this quotation from his evidence:

"Q-117. Am I correct in understanding you—that it is your position that the understanding between you and Homan was that you would pay him so much per week, which began at $125.00 and ended at $150.00, and if you thought the business justified it you would give him bonuses to be determined by you?

"A. Correct."

. The appellee said that although he had not agreed to the claimed two-to-one division, he regarded that ratio as a good guideline; he said that it is generally considered sound practice among architects that the chief of the office receive twice the amount being paid the highest paid subordinate.

Upon the basis of this and other evidence heard, the Master Commissioner concluded and found that there was an oral agreement for division of the net profits on the two-to-one basis as claimed by appellant. However, the trial judge was of a different opinion. Since we conclude that the finding of the trial court was clearly erroneous on this vital point, we refer to the findings of the court.

■ In his prefatory comment, the trial judge called this "a very difficult case"; he pointed out that although wide difference is seen in facts and opinions expressed by the opposing litigants and their witnesses, "they were all trying to be sincere and helpful." The trial court then proceeded on the theory that appellant's claim is based upon a "partnership." Factors which the court considered as reflecting an absence of a partnership were then made the basis for the court's conclusion that the appellant had failed to establish his claim. In this we believe the circuit court erred. The appellant did not premise his case upon a legal partnership; therefore, no significance may be attributed to the absence of the usual elements of partnership.

Then the court dealt with the question whether there was an agreement to share the profits. That the "partnership" concept yet lurked in the court's reasoning is evidenced by this opening comment about the profit sharing agreement: "Even according to plaintiff there was no contemplation of losses, but a contemplation of profits only * * *." Then the trial judge observed: "Homan and his witnesses make out a strong case for the ⅓–⅔ split of net profits, while Lusk makes an equally strong case for his point of view that he would pay Homan what was right depending on the income when and as he

could and that Lusk was to be the judge as to the amount paid."

 The difficulty we have with the trial court's conclusion is that we are unable to say that appellee Lusk presented an "equally strong case for his point." We have appellee's own testimony that there was no such agreement, but it is set over against appellant's testimony that there was. Here the equality disappears. Appellant buttresses his evidence with the change in office routine (the tax reports), the change in outward representations as to the nature of the relationship (the stationery and telephone listings), the increases in appellant's compensation, the change in the matter of designating the checks from "salary" to "drawing account," the "bonus" payments, the physical evidence that appellee had some insight into the two-to-one claim long before the suit (Plaintiff's Exhibit B), and the testimony of three former employees of appellee asserting that appellee had stated to them that the two-to-one arrangement prevailed.

The lower court rejected the "partnership" (not claimed) and refused the profit sharing theory—but held " * * * but there was an agreement to pay something." On this theory it based the award now before us.

There was no evidence, from either side, to support this view. Since the chancellor has found there was an agreement to pay something, it follows that the "agreement" —the only agreement—was on the two-to-one basis advanced by appellant. We do not base our ruling on the premise that there is merely a preponderance of evidence favoring appellant; it is our view that the evidence for appellant's position—even as interpreted by the chancellor—is so convincing that the trial court's opposite conclusion is clearly erroneous. CR 52.01.

Our view that there was an agreement for a two-to-one split makes necessary a consideration of the respective claims of the parties as to what ultimate sum, if any, remains due appellant on that theory. The Master Commissioner, having accepted the agreement theory, also approached the same problem. His findings in this respect were that appellant should recover $11,976.16, plus one-third of any sum, not exceeding $5,753.70, collected by appellee from Board of Education of Greenup County as compensation for architectural services performed for it prior to September 16, 1960.

There is substantial agreement between the parties as to the actual income and expense figures for the years 1957 through 1959. The difficulties arise as to the proper treatment of income received in 1956 which arose from services performed in 1955; likewise, problems are presented with respect to appropriate handling of income and expenses accrued but not received or paid as of September 16, 1960. No useful purpose would be served by undertaking any detailed statement of the various claims of the parties as to the appropriate figures. It suffices to say that we have carefully considered the entire record, including the findings of the trial judge and the commissioner. It is our conclusion that the findings of the Master Commissioner accurately resolve the fiscal differences between the litigants. As noted, the commissioner's recommendation was for judgment to be awarded appellant for $11,976.16 and costs, plus an undetermined sum, based on one-third of any sum up to $5,753.70 received by appellee from Board of Education of Greenup County.

The judgment is reversed on the original appeal and affirmed as to the cross-appeal. The lower court is directed to enter judgment for appellant, consistent with this opinion, with such appropriate ancillary orders as may be required to finally fix the exact amount payable with respect to the fund to be collected from Board of Education of Greenup County.